PEOPLE *v.* HOLBROOK.

1. DISTRICT AND PROSECUTING ATTORNEYS — LAW ENFORCEMENT — COUNTIES.

   The prosecuting attorney is the chief law-enforcement officer of a county.

2. JUSTICES OF THE PEACE—JURISDICTION—STATUTES.

   The court of the justice of the peace is a court of inferior and limited jurisdiction and is confined strictly to the power conferred on it by law, to be exercised in the prescribed manner.

3. CRIMINAL LAW—JUSTICES OF THE PEACE—JURISDICTION—ORDER BY PROSECUTING ATTORNEY AUTHORIZING WARRANT.

   Prosecution for game law violation was an unlawful procedure where complaint drawn up by a conservation officer was

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 42 Am Jur, Prosecuting Attorneys § 19.
[2, 3] 31 Am Jur, Justices of the Peace § 36 *et seq.*

signed by a trooper of the State police and warrant issued by a justice of the peace without indorsement or order in writing authorizing the warrant executed by the prosecuting attorney, where the statute requires such orders with exceptions of traffic law violations and proceedings initiated by conservation officers, as the justice of the peace was without jurisdiction, specifically overruling *People* v. *Griswold,* 64 Mich 722 (CLS 1961, § 774.4).

DETHMERS, KELLY, and BLACK, JJ., dissenting.

Appeal from Mackinac; Fenlon (Edward H.), J. Submitted February 4, 1964. (Calendar No. 21, Docket No. 50,089.) Decided June 1, 1964.

Charles F. Holbrook was convicted of violation of the conservation game laws. Reversed and defendant discharged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James R. Ramsey,* Assistant Attorney General, for the people.

*Wickett & Erickson (Charles C. Wickett,* of counsel), for defendant.

ADAMS, J. In the early hours of November 13, 1961, two State troopers while on patrol near Cedarville (Mackinac county) observed a car approaching them. The troopers stopped their car, shut off the lights, and watched the car some 20 minutes. One trooper testified:

"Well, the car was stopped, and it would shut its lights off and show the flashlight and then turn them back on again, pull ahead and shine in the field again, until they spotted some deer in the field."

The troopers finally heard a "loud blast" and saw a person running from the car into the field. The car then started and continued on the road until it was stopped by the troopers. Defendant Holbrook was found to be the driver. He was ordered back

to the point where his alleged partner was. The partner was apprehended with a 5-cell flashlight in his hand and a gun at his feet.

A conservation officer was consulted. He drew up complaints which were signed by 1 of the 2 troopers. A justice of the peace issued warrants.

At trial in circuit court, after appeal from justice court, Holbrook's counsel moved to quash on the ground that no indorsement or order in writing authorizing the warrant had been executed by the prosecutor. The motion was denied. The jury found Holbrook guilty.

The pertinent portion of CLS 1961, § 774.4 (Stat Ann 1961 Cum Supp § 28.1195) reads as follows:

"It shall not be lawful hereafter for any justice of the peace to issue warrants in any criminal cases except where warrants are requested by members of the State police or any sheriff's department for traffic or motor vehicle violations until an order in writing allowing the same is filed with such justice and signed by the prosecuting attorney of the county or unless security for costs shall have been filed with the justice."

Since the warrant was issued without the authority and written order of the prosecuting attorney, did the justice of peace have jurisdiction?

The above statute, to some extent, is a reenactment of Howell's Annotated Statutes (1882), § 7135a:

"It shall not be lawful hereafter for justices of the peace to issue warrants in any criminal cases, except in cases not cognizable by justices of the peace, or breach of the peace committed in the presence of the officer making the arrest, until an order in writing allowing the same is filed with such justice, and signed by the prosecuting attorney for

the county, or unless security for cost shall have been filed with said justice."

*People* v. *Griswold* (1887), 64 Mich 722, was decided under the above section. In *Griswold* the Court said:

"While an omission to secure an order from the prosecuting attorney before issuing process in criminal cases might subject the magistrate to censure, and possibly, in some cases, to pecuniary injury and official embarrassment, it was never intended to deprive the court of jurisdiction in any case; and whether the complaining party has given to the people security for costs in the case is a subject in which the respondent is not especially interested, and, if the people are satisfied to prosecute without such security, there is no reason why he should complain. The prosecuting attorney appeared and prosecuted the respondent before the police court, which is certainly sufficient approval by him."

Reconsideration of the holding in *People* v. *Griswold, supra,* is indicated at this time in view of the fact that the statute then in effect was repealed in 1927 and CL 1948, § 774.4 (Stat Ann 1954 Rev § 28-.1195), was enacted 2 years after the repeal.*

The policy behind the statute would appear to be to insure orderly procedure by, in the main, funnelling all law enforcement through the prosecuting attorney, the chief law-enforcement officer of a county. Exception is allowed in connection with traffic violations, or a complainant is permitted to proceed on his own if security for costs is filed with the justice. The filing of costs assures payment to the justice, and is also a test of the complainant's belief in the guilt of the person accused.

* The code of criminal procedure, PA 1927, No 175 enacted ch 14, § 4, without a similar provision, which was then added by PA 1929, No 290, and amended to its present form by PA 1958, No 136.— REPORTER.

There is a further exception to the above statute, contained in CLS 1961, § 300.12 (Stat Ann 1958 Rev § 13.1222), which reads:

"The director of conservation, or any officer appointed by him, may make complaint and cause proceedings to be commenced against any person for a violation of any of the laws or statutes mentioned in section 1 of this act,* without the sanction of the prosecuting attorney of the county in which such proceedings are commenced, and in such case, such officer shall not be obliged to furnish security for costs. Said director, or any of said officers, may appear for the people in any court of competent jurisdiction in any cases for violation of any of said statutes or laws, and prosecute the same in the same manner and with the same authority as the prosecuting attorney of any county in which such proceedings are commenced, and may sign vouchers for the payment of jurors' or witness' fees in such cases in the same manner and with the same authority as prosecuting attorneys in criminal cases."

Since the legislature has made certain exceptions within CLS 1961, § 774.4 (Stat Ann 1961 Cum Supp § 28.1195), since it also provided a special procedure for handling game violations in CLS 1961, § 300.12 (Stat Ann 1958 Rev § 13.1222)*, and, finally, in view of the clear language of the statute itself which states that a justice of the peace cannot lawfully issue a warrant in criminal cases unless the statute is followed, defendant was unlawfully proceeded against.

"A justice's court is of inferior and limited jurisdiction and is confined strictly to the power conferred on it by law, to be exercised in the prescribed manner." *In re Harrand,* 254 Mich 584, 590.

---

* Conservation act, game and fish enforcement, PA 1929, No 192, as amended (CL 1948 and CLS 1961, § 300.11 *et seq.,* Stat Ann 1958 Rev § 13.1221 *et seq.*).—Reporter.

The justice of the peace had no jurisdiction.

Should the illegal procedure be allowed to stand because the prosecuting attorney subsequently appeared and prosecuted the case? The initial unlawfulness may not be so validated. A prosecutor, under the circumstances of this or similar cases, might well feel under a compulsion to appear and prosecute even though he might not otherwise have done so in the exercise of his own independent judgment had he been consulted initially as the law requires. *Griswold* is overruled.

The verdict of the jury and the sentence imposed are reversed and vacated, and the defendant is discharged.

KAVANAGH, C. J., and SOURIS, SMITH, and O'HARA, JJ., concurred with ADAMS, J.

BLACK, J. (*dissenting*). We have in this State a rule of statutory construction which—for this case —will bear repeating. It is that a long continued construction, given a long-standing statute by executive officers charged with its execution and administration (no one meanwhile having questioned such construction so far as our reports disclose), is entitled to most respectful consideration and will not be overruled without cogent reasons.

Michigan cases to the point are gathered in 16 Callaghan's Michigan Digest, Statutes §§ 109, 110, pp 494–496. Particularly as in today's instance, where the source of construction is a mature and hitherto unquestioned opinion of the official adviser of the State government, should that rule be taken into deliberative consideration. See, as dealing with the interpretational respect due such an opinion, the case of *Johnson* v. *Ballou,* 28 Mich 379, at 384. The Court's opinion on that occasion was written by Mr. Justice COOLEY.

In 1929 Attorney General Brucker was called upon to decide today's question of statutory construction. He ruled that, under the amendment of PA 1929, No 290, which amendment duplicated in pertinent substance How Stat, § 7135a,[1] it "would seem to be safe to hold that the provisions of section 2[2] * * * authorizing the issuance of a warrant in game law violation cases without either the approval of the prosecutor or the posting of security for costs are an exception to the general provision set forth in PA 1929, No 290, requiring the posting of security for costs or the written approval of the prosecutor in all cases." OAG biennial report 1928–1930, pp 658, 659.

I would adhere to the foregoing opinion, not only in view of the rule of construction mentioned above but also in view of what was written for *People* v. *Griswold,* 64 Mich 722. As for the proposal that *Griswold* be overruled, I point to considerations as follows. For more than three quarters of a century *Griswold* (a *unanimous* rather than *divisive* opinion), followed unanimously in the meantime by *People* v. *O'Hara,* 278 Mich 281, 293, has stood in our trial courts as dependable precedent for the jurisdictional principle Justice ADAMS has quoted therefrom.[3] For no reason whatever as I perceive, save only that *Griswold* is looked upon by some here as bad law for today's times, it is moved that we hold that this justice of the peace "had no jurisdiction" for want of written authorization by the prosecuting attorney of the warrant as issued; the warrant that prosecutor pursued later by successful prosecution. I cannot agree for reasons appearing in *Griswold;* also for reasons made plain over my

---

[1] The same substance was re-enacted by PA 1958, No 136.

[2] Reference is to conservation act, game and fish enforcement, now found in CLS 1961, § 300.12 (Stat Ann 1958 Rev § 13.222).—REPORTER.

[3] See treatment of *Griswold* in 1 Gillespie, Michigan Criminal Law and Procedure (2d), § 186, p 221.

signature in the *Halfacre Case* (*Halfacre* v. *Paragon Bridge & Steel Co.*, 368 Mich 366), at 384–389.

I would add this observation. In view of currently broached legal thought, that like overrulings in criminal cases are retroactively effective, any holding that the justice in cases as at bar has no jurisdiction to proceed is bound to provoke another group of appeals for newly defined and retroactively guaranteed due process. This is all so unnecessary, there being no persuasive reason for overrulement as proposed and the question of liking *Griswold* or liking it not being primarily one for legislative consideration. Surely, here, the doctrines of "legislative acquiescence" and "legislative acceptance" have come to fully effective flower.

There is, I fear, an all too easygoing tendency in our midst to overrule long since settled and unanimous but unsatisfactory constructions of standing statutes. Consider *Halfacre, supra;* also *Wallace* v. *Tripp,* 358 Mich 668, 681; *Harris* v. *City of Detroit,* 367 Mich 526, 536–539, and now *In re Carey,* 372 Mich 378, 382.

I, too, believe that provably errant precedent of statutory construction, especially that which is of *recent* origin and is opposed by vigorous and portentously predictive dissent, should be overruled. See, for instance, the contribution made by the undersigned to *Park* v. *Employment Security Commission,* 355 Mich 101, at 141–151. But, as pointed out in that contribution, *stare decisis* is the rule, and overrulement is the exception. The exception, to justify its application, calls for something more than contemporaneous disfavor.

No other presented question warrants discussion. I would affirm.

DETHMERS and KELLY, JJ., concurred with BLACK, J.