PEOPLE v. CARTER.

DECISION OF THE COURT.

1. CRIMINAL LAW—NEW TRIAL—VALIDITY OF WARRANT.

Order of trial court denying a new trial for alleged violation of constitutional rights of defendant in prosecution resulting in conviction of second-degree murder on plea of guilty thereto by reason of alleged invalidity of the warrant for defendant's arrest, is affirmed (CL 1948, §§ 750.317, 764.1).

SEPARATE OPINION.

T. M. KAVANAGH, SOURIS, AND ADAMS, JJ.

2. CRIMINAL LAW—SECOND-DEGREE MURDER—JUSTICES OF THE PEACE.

*Murder in the second degree is an offense not cognizable by a justice of the peace (CL 1948, § 750.317).*

3. SAME—STATUTES—PROSECUTING ATTORNEY—AUTHORITY TO ISSUE WARRANT.

*The policy behind statutes requiring a written order by the prosecuting attorney to authorize the issuance of a warrant*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 39 Am Jur, New Trial § 6.
[2] 21 Am Jur 2d, Criminal Law § 397.
[3-6] 5 Am Jur 2d, Arrest §§ 10, 12, 13, 16.
  31 Am Jur, Justices of the Peace § 22.
[7] 39 Am Jur, New Trial § 6.
  5 Am Jur, Arrest §§ 10, 12, 13, 16.
[8] 5 Am Jur 2d, Arrest §§ 10, 12, 13, 16.
  21 Am Jur 2d Criminal Law § 397.
  31 Am Jur, Justices of the Peace § 22.
[9] 5 Am Jur 2d, Arrest §§ 7, 10, 12, 13.
[10] 31 Am Jur, Justices of the Peace § 29.
  30A Am Jur, Judges § 78.
[11] 50 Am Jur, Statutes §§ 217, 318, 319.
[12] 20 Am Jur 2d, Courts §§ 87, 88.
[13] 20 Am Jur 2d, Courts § 231.

*by a magistrate·in offenses cognizable by him would appear to be to insure orderly procedure by, in the main, funnelling all law enforcement through the prosecuting attorney, the chief law-enforcement officer of a county (CL 1948 § 764.1; CLS 1961, § 774.4).*

4. SAME—STATUTES—AUTHORIZATION· OF WARRANTS—PROSECUTING ATTORNEY.

*The object sought to be accomplished by statutes requiring a written order by the prosecuting attorney to authorize the issuance of a warrant by a magistrate for an offense not cognizable by him, was to guard against indiscretion· in permitting legal proceedings to be instituted against parties for crime without. any previous inquiry into the circumstances (CL 1948, § 764.1; CLS 1961, § 774.4).*

5. SAME—STATUTES—ISSUANCE OF WARRANT—PROSECUTING· ATTORNEY.

*The purpose of statutes requiring a written order by the prosecuting attorney to authorize the issuance of a warrant by a magistrate for an offense cognizable by him is to require the prosecuting attorney to pass upon the issuance of a warrant before the warrant is issued (CL 1948, § 764.1; CLS 1961, § 774.4).*

6. SAME—ORDER IN WRITING—AUTHORIZATION OF WARRANT—PREPARATION OF COMPLAINT—PROSECUTING ATTORNEY.

*The preparation of a complaint by a prosecuting attorney and the filing of the same by him with the magistrate ·held, to fulfill all the purposes of the statute requiring an "order in writing" to be filed with the magistrate by the prosecuting attorney before the magistrate may issue warrants in criminal cases not cognizable by him (CL 1948, § 764.1).*

7. APPEAL AND ERROR—CRIMINAL LAW—MOTION FOR NEW ·TRIAL—WARRANT.

*Denial of motion for new trial for defendant convicted, on plea of guilty, of second-degree murder, where defendant claims his constitutional rights were violated by· failure of prosecuting attorney to sign and file with the examining magistrate an order authorizing the issuance of the warrant under which defendant was charged held, proper, where the complaint filed with the magistrate was prepared by the prosecuting attorney, fulfilling all the purposes of· the statute, in that the complaint· is in writing, it can be prepared only after consideration of the nature of the charged offense, it does provide orderly procedure, and it does guard against*

*indiscretion by magistrates acting without the benefit of
direction from the prosecuting attorney (CL 1948, §§ 750-
.317, 764.1).*

### Separate Opinion.
### Black, J.

8. Criminal Law—Magistrates—Issuance of Warrant Without
Order of Prosecuting Attorney—Jurisdiction.

> *Omission to secure an order from the prosecuting attorney
> before issuing process in criminal cases may subject a mag-
> istrate to censure, and possibly, in some cases, to pecuniary
> injury and official embarrassment, but such omission was
> never intended to deprive the court of jurisdiction in any
> case (CL 1948, § 764.1).*

9. Same—Arrest Statute—Order Signed by Prosecuting Attor-
ney.

> *The arrest statute, making issuance of warrants unlawful except
> where the warrants are requested by proper authorities and
> allowed by the prosecuting attorney, does not specify the form
> of signature the prosecutor must affix to the order and does
> not specify that failure of the prosecutor to sign and file an
> order means "no jurisdiction," but does specify that there
> must be filed "with such justice" an "order in writing" and
> that the prosecutor must sign it; overruling* People v. Holbrook,
> *373 Mich 94 (CL 1948, § 764.1).*

10. Judges—Jurisdiction—Civil Damages.

> *Any judge having no jurisdiction who takes from another his
> liberty or property or both, is actionably responsible to the
> latter.*

11. Courts—Construction of Statutes—Precedents.

> *One decision construing an act does not approach the dignity
> of a well-settled interpretation.*

### Separate Opinion
### O'Hara, J.

12. Courts—Jurisdiction.

> *Jurisdiction relates to the person of a party and the subject
> matter of litigation.*

See headnote #6.

SEPARATE OPINION.

DETHMERS, C. J., and KELLY, J.

13. COURTS—PRECEDENTS—OVERRULED CASES.
   *Emphasis should be given to the overruling of a case when such is the fact.*

Appeal from an order of Court of Appeals, Division 2; Quinn, P. J., T. G. Kavanagh and McGregor, JJ., denying leave to take delayed appeal from an order of Newaygo; Van Domelen (Harold), J. Submitted November 10, 1966. (Calendar No. 11, Docket No. 51,356.) Decided March 13, 1967.

Shirley Wilfred Carter was convicted of second-degree murder. Motion for new trial denied. Application for delayed appeal to the Court of Appeals denied. Defendant appeals on leave granted. Affirmed.

*Harry D. Reber,* for defendant.

ADAMS, J. Defendant Carter pleaded guilty in 1959 to murder in the second degree[1] and is serving his sentence in the State prison of southern Michigan at Jackson. A motion to set aside the conviction and sentence or, in the alternative, for a new trial in the circuit court was made by him in 1965. The motion claimed that the constitutional rights of defendant were violated by failure of the prosecuting attorney to sign and file with the justice of the peace an order authorizing the issuance of the warrant under which defendant was charged and that, in the absence of such an order, the warrant was invalid. Defendant's motion relied on the provisions of CL 1948, § 764.1 (Stat Ann 1954 Rev § 28.860) and the

---

[1] CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549)—REPORTER.

decision of this Court in *People* v. *Holbrook* (1964), 373 Mich 94.

The circuit judge denied the motion. The Court of Appeals denied defendant's application for delayed appeal. Leave to appeal was granted by this Court on February 11, 1966.

The undisputed fact is that the complaint filed with the justice of the peace was prepared by the prosecuting attorney. No order in writing for the issuance of a warrant was prepared or filed. The warrant was issued by the justice of the peace. Defendant waived preliminary examination and was bound over to circuit court. An information was filed against him in the circuit court by the prosecuting attorney. Defendant was arraigned on the information and counsel was appointed for him. Upon demand of counsel, the matter was returned to the magistrate for preliminary examination. Defendant was again bound over to circuit court. When he was arraigned on the information, on advice of counsel and after interrogation by the trial judge, he pled guilty to murder in the second degree.

Murder in the second degree is an offense not cognizable by a justice of the peace.

Where the offense is one cognizable by a justice of the peace the applicable statute was CLS 1961, § 774.4 (Stat Ann 1963 Cum Supp § 28.1195).[2] This is the section of the law which was under consideration in *Holbrook*. The statutory provision under consideration in this case is found in the code of criminal procedure, CL 1948, § 764.1 (Stat Ann 1954 Rev § 28.860). Its pertinent provision is as follows:

"It shall not be lawful for any of the above named public officials to issue warrants in any criminal

[2] Amended by PA 1965, No 307 (Stat Ann 1965 Cum Supp § 28.1195).

cases, * * * until an order in writing allowing
the same is filed with such public officials and signed
by the prosecuting attorney for the county."

In this present case, the question is whether action
by the preparation of a written complaint by the
prosecuting attorney and filing of same with the
justice of the peace can be construed to satisfy the
requirement of the statute.

In *People* v. *Holbrook,* in commenting on the
policy behind the applicable statute then in effect
(CLS 1961, § 774.4 [Stat Ann 1961 Cum Supp §
28.1195]), the majority opinion of this Court stated
(p 97):

"The policy behind the statute would appear to be
to insure orderly procedure by, in the main, funnel-
ling all law enforcement through the prosecuting at-
torney, the chief law-enforcement officer of a county.
Exception is allowed in connection with traffic viola-
tions, or a complainant is permitted to proceed on
his own if security for costs is filed with the justice.
The filing of costs assures payment to the justice,
and is also a test of the complainant's belief in the
guilt of the person accused."

In *People* v. *Griswold* (1887), 64 Mich 722, the
Court said (p 723):

"The object sought to be accomplished by that stat-
ute was to guard against the indiscretion, frequently
indulged in by magistrates, in permitting legal pro-
ceedings to be instituted against parties for crime
without any previous inquiry into the circum-
stances."

In neither *Holbrook* nor *Griswold* did the prosecu-
ting attorney direct the issuance of the warrant by
written order *or otherwise,* nor did he participate in

the proceedings until after the crucial decision to issue a warrant was made. The purpose of the statute is to require the prosecuting attorney to pass upon the issuance of a warrant *before the warrant is issued.*

Section 2 of the code of criminal procedure, PA 1927, No 175, being CL 1948, § 760.2 (Stat Ann 1954 Rev § 28.842), in its entirety reads as follows:

"This act is hereby declared to be remedial in character and as such shall be liberally construed to effectuate the intents and purposes thereof."

The statute does not specify the form of "order in writing" which the prosecuting attorney is to file for issuance of warrants. The preparation of a complaint by a prosecuting attorney and the filing of the same by him with the magistrate fulfills all of the purposes of the statute. The complaint is in writing, it can be prepared only after consideration of the nature of the charged offense, it does provide orderly procedure and it does guard against indiscretion by magistrates acting without the benefit of direction from the prosecuting attorney.

The purpose of the statute having been met and the requirement of the law being that the statute be liberally construed, we find no error.

Care should be taken to note that the holding in this opinion does not return to the overruled holding in *Griswold.* The *policy* of the law was recognized in *Griswold* and is quoted herein even though the holding of *Griswold* was contrary to that policy. This opinion, in harmony with *Holbrook,* holds that the prosecuting attorney must signify in writing his approval of the issuance of a warrant. The preparation of the complaint in this case satisfied that requirement. The action of the circuit court in denying defendant's motion is affirmed.

T. M. KAVANAGH and SOURIS, JJ., concurred with ADAMS, J.

.

BLACK, J. (*concurring in affirmance*).    Without having vouchsafed the altogether visible fact thereof, Justice ADAMS' current opinion quietly—very quietly—vacates the misguided "no jurisdiction" ruling made by *People* v. *Holbrook,* 373 Mich 94, 98, 99 and restores the sound common sense of *People* v. *Griswold,* 64 Mich 722.    I regret that Justice ADAMS has seen fit to mince around these inexorable conclusions.    Like that TV-touted cough medicine his said opinion "contains silentium"; the silencer of due candor.

If loftily seated judges may yet learn lessons, there is one for the Supreme Court of Michigan in this interregnal lapse between 1964 *Holbrook* and 1967 Carter.    It is that "freehanded rewriting of much of the body of the law" by appellate judges amounts to no less than dictatorship, the inevitable result of which makes today's opinions "as useless in the law libraries of tomorrow as last year's sports page."

The quotations are taken from an address delivered at St. Paul by Michigan's eminent Federal Judge, the Honorable Clifford O'Sullivan, judge of the court of appeals for the sixth circuit.[1]    Judge O'Sullivan proceeded:

"It has been our proud boast that ours is a government of laws and not of men.    Exercising my right to free speech, I express a fear that in some of today's courts the rule of law is not obeyed.    A

[1] Address delivered July 28, 1966, at West Publishing Company's annual dinner meeting.    Published thus far by pamphlet issued and distributed by West to lawyers and judges in the Federal system. The complete address deserves contemplative reading by all who may be concerned with preservation of what in May each year this profession of ours expounds as "The Rule of Law."    Its title is "Free Speech—a Constitutional Duty."

discerning observer will be aware that, in many areas, our State and Federal appellate courts are engaged in a freehanded rewriting of much of the body of the law. That they are seeking only to lead us closer to the ideal of perfect justice does not forbid testing the validity and wisdom of their directions. * * *

"Upon us, as lawyers and judges, will be the chief burden of making sure that in our time we retain here a government of laws. To do this, it will not be enough that our courts be adequately manned and physically equipped to dispatch the business assigned to them. It will not be enough that we reform and streamline our procedural methods from time to time. We will do little to preserve the rule of law unless the judges who direct our procedures themselves recognize that they are bound and restrained by the rule of law. Law means nothing unless it is, or can be, known by those who are expected to obey it. And even if a rule of law is known, it will mean little unless with knowledge of it goes the assurance that he who conforms his conduct to the law will have such conduct protected by our courts. If each generation of judges rewrites the law, the so-called rule of law is without meaning. * * *

"If, in our time, *stare decisis* is lightly passed off as an outmoded legal principle, and our courts too frequently become impatient of, or unwilling to await legislative action to make innovations in the law, then, indeed, we will no longer be a government of laws. Judicial dictatorship will be the inevitable substitute. If we feel at liberty to completely cast off the shackles of *stare decisis,* our successors of tomorrow will feel at liberty to follow our example. Our opinions, however profound and right we may think they are, will be useless in the law libraries of tomorrow as last year's sports page."

What the Court does today is well, no matter by what divisive words we may dub the product of

People v. Carter. By its order denying this prisoner's postconviction motion the Court of Appeals
has forced us finally to "do something" about *Holbrook's* ever inexplicable overrulement of the *Griswold Case* (64 Mich 722). The *Holbrook*-predicted
(p 101) flood of petitions, motions and appeals, submitted by those long since brought to justice by
proceedings as in *Griswold,* has hit our trial courts
and appellate divisions hard enough to bring a
reluctant Supreme Court to its precedential senses.
All hitherto convicted and sentenced persons, misled by *Holbrook* as our own waxing records show,
should of due honor be told the naked truth. Those
whose magisterial examinations, trials and sentences have been conducted and done on strength
of proceedings affirmed jurisdictionally by *Griswold*
may—in postconviction appeals and proceedings—
no longer faithfully assign *Holbrook's* "no jurisdiction" pronouncement. Whether today's majority
is willing or unwilling to admit openly where the
Court now stands, the rule our trial courts will
follow henceforth appears in long standing and now
provably durable *Griswold* (*supra* at 723, 724):[2]

"While an omission to secure an order from the
prosecuting attorney before issuing process in criminal cases might subject the magistrate to censure,
and possibly, in some cases, to pecuniary injury
and official embarrassment, it was never intended
to deprive the court of jurisdiction in any case;
and whether the complaining party has given to
the people security for costs in the case is a subject in which the respondent is not especially interested, and, if the people are satisfied to prosecute
without such security, there is no reason why he

---

[2] Until five Justices roamed in *Holbrook,* note how this case of
*Griswold* was consistently followed for more than three-quarters of
a century: *Board of Supervisors of Missaukee County* v. *Van Liew,*
148 Mich 520, 522; *People* v. *O'Hara,* 278 Mich 281, 293; 1 Gillespie,
Michigan Criminal Law and Procedure (2d ed), § 196, p 221.

should complain. The prosecuting attorney appeared and prosecuted the respondent before the police court, which is certainly sufficient approval by him."

For reasons given by the three dissenters from *Holbrook's* majority opinion (they were Justices DETHMERS, KELLY and BLACK), I vote to affirm.

*Supplement:* The foregoing stand for affirmance was delivered to the other Justices January 4, 1967.

By a January 25th redraft of his previously submitted opinion, accompanied by written advices that the redraft "consists primarily of deletion of material in the earlier opinion" and that "Most of the final paragraph is new," Justice ADAMS tells us that he and his remaining votaries are *not* retracing the path back to the *Griswold Case,* even part way. A question of fact arises immediately; it being *prima facie* difficult to persuade anyone that this 20-to-30-year sentenced wife-slayer should not obtain the same "no jurisdiction" relief as did that 60-day sentenced deer-slayer named Holbrook.

Considering what it would do to the rest of the *Holbrook*-dependent movers and petitioners standing now in line, a jurisdictional straddle such as Justice ADAMS proposes for term-sentenced Shirley Wilfred Carter is bound to offend the Civil Liberties Union. That esteemed group is not apt to rapturize over any doctrine which would permit the *nunc pro tunc* injection of criminal jurisdiction[3] upon the ever doubtful strength of some recollection of the prosecutor that he "prepared" the complaint; the complaint which that same record shows

---

[3] Ripe for exploration and exuberant postconviction action must lie a veritable host of *records* of criminal proceedings made between 1887 and 1964, all depending on 1887 *Griswold* for jurisdiction and all disclosing a want of jurisdiction per 1964 *Holbrook*. Professional and judicial mortality tables considered, a goodly share of these *records* are beyond all aid of this Carter-type orally-supplied now-for-then infusion of *jurisdiction*.

was never authorized by an "order" bearing the prosecutor's signature.

With respect to this currently alleged difference between *Holbrook* and Carter, the continuously sole explanation is that "The statute does not specify the form of 'order in writing' which the prosecuting attorney is to file for issuance of warrants." That is true. It is also true that "the statute does not specify the form" of *signature* the prosecutor must affix to that "order in writing," and that it does not "specify"—per *Holbrook*—that failure of the prosecutor to *sign* and *file* an "order" means "no jurisdiction." The statute nevertheless does "specify" that there must be *filed* "with such justice" an "order in writing," and it does "specify" *that the prosecutor must sign it.* This isn't interpretation of a statute; it is *fact.*

Is all this unclear?[4] Well, one may strive in vain to find any semblance of discussion by Justice ADAMS (either in his original draft or in this current draft) of the requirement of the statute that, in addition to the *filing* of that "order in writing allowing the same," such "order" must be *"signed* by the prosecuting attorney" (CL 1948, § 764.1 [Stat Ann 1954 Rev § 28.860]); hence to him the statute just doesn't include any words which require that the "order" (whatever its "form") be thus signed. Of course and until now some of us—lawyers all— have been led to believe that a statutorily required "order," an order which by statute must be "signed"

---

[4] Perhaps, though, there is a distinguishing difference between Carter and *Holbrook*. Holbrook denied all the way through that he was guilty of "shining" deer; whereas Carter voluntarily told the sentencing judge, the occasion being change of plea with court-appointed counsel present (p 4 of transcript):

"*The Respondent.* Well it is kind of strange. Some time between 6 in the morning and—between 6 and 8 in the morning on September 30—my wife awakened me about 6 in the morning.

"Some time between that time, we got into an argument, silly argument at first, and a fight and I shot her."

by a designated officer, is no order at all unless it is signed by him.

We are dealing today with a presented question of *jurisdiction;* first of a magistrate and then of a circuit judge to proceed at all, in 1959,[5] pursuant to a 72-year tried and applied rule of criminal procedure as that rule then stood undisturbed.[6] We know that Holbrook was ordered freed by a 5-3 vote; whereas it is moved now by some of the dischargers of Holbrook that Carter *not* be freed even though both (Holbrook and Carter) were brought to justice and sentence in the outright absence of the *filing* at any time of "an order in writing," *"signed by the prosecuting attorney."* Yes, this is supposed to be "Equal Justice Under Law."

Trial counsel with some little experience know well the superiority of unimpeachable demonstrative evidence over the uncertainties and equivocations that are inherent in the adversarily testified or written word. So let us visually examine what the *Holbrook*-faithful Brethren say was a statutory "order" for issuance of this warrant for murder. Here it is, in entirety:

---

[5] Except perhaps as actors staging mock arraignments and wholly tinselled criminal proceedings.

[6] This homicide occurred September 30, 1959. From and including circuit court arraignment October 2, 1959, through remand on defense motion for examination, filing of the justice's return with transcript of proceedings upon examination, reappearance of defendant in circuit for record of desire to change plea, all proceedings in circuit leading up to new plea and judicial acceptance thereof, and subsequent appearance of the defendant for sentence on December 2, 1959, court-appointed counsel stood at his side.

No question of jurisdiction was raised of course. All counsel, and most certainly the circuit judge, assumed that venerably known *Griswold* settled that question. No one then could have dreamed that, more than four years later, a bare majority of the Supreme Court of Michigan would, by overruling *Griswold*, pass an *ex post facto* law like *Holbrook*. Fortunately for the criminal jurisprudence of Michigan, that majority is no longer here.

"COMPLAINT, JUSTICE COURT
(Filed October 2, 1959)

"STATE OF MICHIGAN ⎱ **SS.**
COUNTY OF NEWAYGO ⎰

"*The complaint and examination on oath and in writing* of Robert W. Dougan taken and made before me, Wells L. Branch a justice of the peace of the city of White Cloud in said county, upon the 30th day of September, 1959, who being duly sworn, says that heretofore, to-wit: on the 30th day of September, 1959, at the township of Merrill and in the county aforesaid,

"SHIRLEY WILFRED CARTER murdered Rosa Lee Easter Carter

contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan; whereof the said Robert W. Dougan prays that said Shirley Wilfred Carter may be apprehended and held to answer this complaint and further dealt with in relation to the same as law and justice may require.

　　　　　/s/ ROBERT W. DOUGAN

"*Taken, Subscribed and Sworn to,*
before me, the day and year first
above written.

/s/　WELLS L. BRANCH
　　　Justice of the Peace."

A thoroughly oriented trial bench and trial profession cannot be cozened into belief that this was a statutorily required "order." It was and still is a statutory complaint, signed by an authorized complainer, and the oath thereof is attested by a warrant-issuing magistrate. The jurisdictional facts are exactly the same as in *Griswold* and *Holbrook*. Hence, if *Holbrook's* "no jurisdiction" ukase is to remain above ground, is not this oppressed long-term prisoner standing at our bar entitled to the same "no jurisdiction" edict as was that 60-day sentenced game law violator, Charles F. Holbrook?

Let us look at *Holbrook* again, now that 31 months have elapsed since the gratuitous blow thereof struck retroactively at the enforcement of Michigan's criminal code. If that decision is permitted to endure it is fairly estimable that thousands of accused persons, many now dead and many still incarcerated, will stand adjudicated as having been arraigned, examined, tried, convicted, and fined or sentenced to prison by puppet courts; the jurisdiction of which to thus proceed was outright nil. This is infinitely worse than a denial of due process resulting in imprisonment at the hands of a jurisdictionally acting judicial officer. And it raises at once a question of civil liability of judicial officers who, by unlawful acts outside the limits of their *jurisdiction,* have deprived victims like Holbrook and Carter of liberty and property.

When any judge having no *jurisdiction* so to do takes from another his liberty or property or both, that judge is actionably responsible to the latter. See discussion of this question, 30A Am Jur Judges, §§ 76, 77, 78, pp 45–50, always bearing in mind Justice Adams' final proclamation (*Holbrook* at 99) that "The justice of the peace had no jurisdiction." To which one must add that the circuit court "had no jurisdiction," when Holbrook on appeal was jury-convicted there, if—contrary to *Griswold*—the justice had none. That *Holbrook*-declared want of jurisdiction automatically made Circuit Judge Fenlon of the 33d circuit, along with the jurisdiction-naked justice of the peace, civilly liable to Mr. Holbrook.

If that *Holbrook* quintet of Justices was right June 1, 1964, neither the justice of the peace nor Judge Fenlon were acting judicially. They were outlaws only; usurpers of judicial jurisdiction.

The practical result of this *Holbrook*-Carter quiblet is that our trial judges will feel compelled either

(a) to wait for another decision with all eight of us participating, or (b) to seek out and then depend upon oral testimony for the purpose of determining the presence or absence of that long since duly invoked—per *Griswold*—*jurisdiction.*   For as all trial judges surely will foresee, more cases inevitably are due to confront the appellate courts of Michigan (upon impetus of *Holbrook* and Carter), such as the instance where both the prosecutor and his secretary are not around to testify about who "prepared" the complaint or, say, the instance where the secretary but not the prosecutor is available to testify and says truthfully (as we may almost judicially notice) that *all* pre-*Holbrook* complaints were prepared by her from supplied forms and that the prosecutor knew naught of the initial stages of the proceeding at hand until, per duty, he or his statutory assistant went about the preparation, signature and filing of the official information (CLS 1961, § 767.40 [Stat Ann 1965 Cum Supp § 28.980]).

The pure aberration of *Holbrook,* and all the unnecessary work that 5–3 decision has cast during the past two years upon already overburdened prosecuting officers, trial judges, and intermediate appellate judges, has grievously wronged the public right to due enforcement of those prescribed rules of human conduct which make up the foundations of government by *law.*   Worse, it has wronged appallingly the courts of our State from top to bottom. The unholy situation created by *Holbrook,* compounded now by our critically immediate divisiveness, will simply fan the Michigan coals of that already developing "slow burn" national columnist James J. Kilpatrick wrote about recently from New York (Detroit Free Press, January 27, 1967):

"The New Yorkers one talks with are developing a slow burn against the coddling of criminals and

lunatics. Their feeling, one surmises, is shared widely across the nation. It is a feeling the Supreme Court of the United States cannot wisely ignore. In the fruits of *Miranda*[7] lie the seeds of a terrible loss of confidence in our courts."

Yes, the same must be said of us; in the fruits of a recent series of divisively voted overrulements lie the seeds of a terrible loss of public confidence in the Supreme Court of Michigan. Necessarily dragged into this morass are the dissenters against *Holbrook* and all duplicates thereof such as *Mosier* v. *Carney*, 376 Mich 532. Give us one more *Holbrook*, or even five votes to immunize *Holbrook* from reexamination, and some members of the Court will be compelled in future criminal matters to start each opinion with allegations of innocence like those of Professor Kamisar; referring here to the professor's 1965 debate with Professor Inbau before the Judicial Conference (39 FRD 375, 441, 450). The Professor, even though not accused, protested much that he was *not* "for crime." Let us hear some of his beginning remarks:

"I keep getting the feeling that I am supposed to be for crime and against law enforcement." (p 450).

"I admit that it is awfully difficult to be 'for crime,' which seems to be the role some of the panelists have assigned me. It is especially hard because of the current 'crime wave,' the current 'crisis,' this 'emergency' about which we have heard so much." (p 452.)

(These words were uttered 18 months ago. Now that 1967 is here, it is fair to wonder aloud whether the professor would continue now to play down "the

---

[7] *Miranda* v. *Arizona*, 384 US 436 (86 S Ct 1602, 16 L ed 2d 694).—Reporter.

current 'crime wave,' the current 'crisis,' this 'emergency' about which we have heard so much.")

*To Conclude:*

1. Judicial jurisdiction to hear and determine is exactly like pregnancy and leprosy. It is present, or it isn't. If not present in *Holbrook,* it was not present in Carter. There was a want of *filing* of an *"order," "signed"* by the prosecuting attorney—in *both cases.* Thus this particular question of jurisdiction leaves no grey area for judicial refuge. Until we speak up on this, openly by the vote of five or more Justices, there will be a constant broadening of that which today cannot be denied; a gap of confidence between us and the people by whose grace we are seated here.

2. *Holbrook* is that "one decision construing an act [which] does not approach the dignity of a well settled interpretation." (*Smith* v. *Lawrence Baking Co.,* 370 Mich 169, 177; citing and following *White* v. *Winchester Country Club,* 315 US 32, 40 [62 S Ct 425, 86 L ed 619] and *United States* v. *Raynor,* 302 US 540, 552 [58 S Ct 353, 82 L ed 413]). Like divisive *Wagner* v. *LaSalle Foundry Co.,* 345 Mich 185 (overruled by the *Lawrence Baking Case*), *Holbrook* from the beginning has exposed its jurisdictional fallacy to re-examination. It is opposed not only by *Holbrook's* dissenters but also by 3 unanimous decisions handed down over the years; *People* v. *Griswold,* 64 Mich 722; *Board of Supervisors of Missaukee County* v. *Van Liew,* 148 Mich 520, 522; *People* v. *O'Hara,* 278 Mich 281, 293. Now that the one vote which made up *Holbrook's* majority has disappeared, *Holbrook* should be overruled—summarily—and the 3 unanimous decisions above should be restored.[8]

---

[8] "A four-to-three decision of the Supreme Court of but 2-1/2 years' standing is too recent and too close a margin to carry great weight under the doctrine of *stare decisis.*" (Syllabus 3, *Sommers* v. *City of Flint,* 355 Mich 655; opinion of the Court by EDWARDS, J.).

3. The submission here and below of motions and applications for leave to bring in specific records of convictions and guilty pleas, for more *Holbrook*-style "no jurisdiction" absolution, suggests imperatively that the present case should now be treated as resubmitted, just as we have ordered with respect to another correspondingly divisive matter,[9] so that Justice Brennan may participate in what then doubtless would be a less infirm precedent than *Holbrook.*

As noted above *Holbrook* was decided by the margin of a single vote; a vote no longer here. The Court that is now and will be foreseeably, not the Court that was, should settle this recurrently disputatious question of criminal *jurisdiction.* If all of the courts which hitherto have proceeded on strength of *Griswold were never possessed of jurisdiction so to do,* why should not *today's* Court say so, thus ending further oppression of *all* victims of *Griswold?* Many must yet be in prison. Many more will want the records cleared of wholly void convictions obtained by counterfeit court proceedings. Many more will want investigations made in their behalf, at public expense of course, to ascertain whether as to them the record shows that an "order" was filed; also to ascertain the unavailability of the prosecutor or other witness who might by oral testimony fill the jurisdictional void made by *Holbrook.*

My vote to affirm is cast again on strength of the precedent as well as the visibly sensible reasoning of *People* v. *Griswold.*

---

[9] The reference here is to the Governor's request for advisory opinion (October 1966 term, No. 15; now January 1967 term No. 10). Our minutes of January 4–5, 1967 disclose:

"Motion was made by Justice Adams, supported by Justice Souris, that the *Governor's Request for an Advisory Opinion on Act 261*, PA 1966, be considered as resubmitted as of January 4, 1967, so that Justice Brennan can participate. Motion carried. Voting for the motion: Justices Adams, Souris, O'Hara, Black, Brennan and Kavanagh; dissenting; Justices Kelly and Dethmers." (Order entered January 16, 1967; 26 Supreme Court Journal, 264),

O'HARA, J. (*concurring in affirmance*). I concur in Mr. Justice ADAMS' result. Having signed the majority opinion in *People* v. *Holbrook,* 373 Mich 94, I am obligated by Mr. Justice BLACK's opinion to make my position clear. In the literal sense, "jurisdiction" relates to the person of a party litigant and the subject matter of litigation. To that extent the sentence in *Holbrook:*

"The justice of the peace had no *jurisdiction,*" (*Holbrook, supra,* p 99.)

was imprudently used. The better word would have been that of the statute, namely, that the proceedings were *"unlawful."*

However, as Justice ADAMS points out in his opinion the precise point that divided the Court in *Holbrook* is not the issue in this case.

The question is not the *effect* of the failure of the prosecuting attorney to cause to be filed with the justice of the peace an order, in writing, allowing the issuance of the warrant. The question is whether what the prosecuting attorney did complied with the statutory requirement. I hold with Justice ADAMS:

"The preparation of a complaint by a prosecuting attorney and the filing of the same by him with the magistrate fulfills all of the purposes of the statute."

KELLY, J. (*concurring in affirmance*). I concur with Justice BLACK that we not only affirm but emphasize the fact that we overrule *People* v. *Holbrook,* 373 Mich 94.

DETHMERS, C. J., concurred with KELLY, J.

BRENNAN, J., took no part in the decision of this case.