PEOPLE v MORDELL

1. SEARCHES AND SEIZURES—EVIDENCE—SUPPRESSION OF EVIDENCE—PURPOSE.

The purpose of the rule which requires the suppression of evidence which was improperly seized is to protect the public from impermissible police practices.

2. SEARCHES AND SEIZURES—EVIDENCE—SUPPRESSION OF EVIDENCE—CONSTITUTIONAL LAW—WARRANT.

The rule which requires the suppression of evidence which was improperly seized is a guarantee against unreasonable searches and seizures where the court has reason to believe the search involves unreasonable police methods, but it is not invoked to suppress evidence, even though error is found in the issuing of a warrant, where the facts indicate that the arresting officers acted reasonably on the evidence before them and the court finds no threat to Fourth Amendment values (US Const, Am IV).

3. SEARCHES AND SEIZURES—WARRANT—EVIDENCE—SUPPRESSION OF EVIDENCE—LOCAL COURT RULES—VIOLATION.

A warrant issued by a judge other than an examining magistrate in violation of a local court rule which requires that a warrant be issued by an examining magistrate unless he is unavailable, is not thereby rendered so improper as to be grounds for suppressing the evidence seized pursuant to the warrant and dismissing the case, where the police officer's affidavit, the preparation of the warrant, and the reasonableness or propriety of the search are not challenged; the public should not be penalized for the breach of an in-house court rule.

Appeal from Recorder's Court of Detroit, James Del Rio, J. Submitted Division 1 June 14, 1974, at Detroit. (Docket No. 18541.) Decided September 11, 1974. Leave to appeal denied, 393 Mich —.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 29 Am Jur 2d, Evidence §§ 425–427.

Anthony Mordell was charged with possession of heroin. Defendant's motion to suppress the evidence was granted and the charge dismissed. The people appeal by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Begole, Lukomski, Maddock & MacDonald,* for defendant.

Before: BRONSON, P. J., and ALLEN and ELLIOTT,* JJ.

ALLEN, J. This case comes to us on a concise statement of facts which focus the single issue of whether an alleged violation of Rule 9, § 1 of the rules of the Recorder's Court for the City of Detroit is grounds for granting defendant's motion to suppress the evidence and dismissal of the charge against defendant of knowingly or intentionally possessing heroin contrary to MCLA 335.341(4)a; MSA 18.1070(41)(4)(a).

Section 1 of Rule 9 of the Recorder's Court Rules, approved by the Supreme Court July 20, 1970, provides:

"RULE 9

"Felony Warrants, Arrests
and Arraignments

"*Section 1. Issuance of Warrants.* Requests for arrest

* Circuit judge, sitting on the Court of Appeals by assignment.

warrants, and search warrants in cases of alleged felonies and high misdemeanors shall be presented to, and the warrant shall issue in the name of the Examining Magistrate. In his absence such warrants may be issued and signed by any available regular Judge of this Court."

Defendant was arrested June 19, 1973 after a search warrant was issued earlier that day by Recorder's Court Judge Joseph A. Gillis. The record of the preliminary examination held June 28, 1973 before Recorder's Court Judge Donald S. Leonard, contains the only sworn testimony relating to the issue before us.

"*Q.* You obtained that search warrant from Judge Gillis?

"*A.* Yes.

"*Q.* Did you obtain that search warrant during the month of June?

"*A.* Yes, sir.

"*Q.* Did you obtain it in this court?

"*A.* Yes.

"*Q.* What time did you obtain that search warrant, day or night?

"*A.* I believe it was late a.m.

"*Q.* Late a.m.?

"*A.* Yes sir.

"*Q.* And was that a weekday or during the week?

"*A.* During the week.

"*Q.* Do you recall?

"*A.* 19th.

"*Q.* What efforts, if any, did you make to find Judge Leonard or Judge Ford of this bench were available?

"*A.* We were informed by the prosecutor—

"*Q.* I'm not asking you that

\* \* \*

"*The Court:* I'm trying to find out—you are trying to find out why a judge didn't sign it. Let him answer it.

"*A.* On order of the assistant prosecuting attorney, I went to Judge Gillis's courtroom.

"*Q.* Somebody told you to go there?

"*A.* Yes.

"*Q.* So then I take it you made no effort to find out either if Judge Ford or Judge Leonard?

"*A.* No, sir.

\* \* \*

"*The Court:* Well, the point we are leading to one thing alone. The rules of our Court you are required to come before the judge who is responsible for the examinations, get a search warrant from him. If the judges are not available any other judge of the court under our court rules may sign the search warrant or any other complaint. There is no legal impediment to this.

"*Mr. MacDonald:* I think the rules of the court, sir, are to be followed, are they not?

"*The Court:* This does not mean there is anything involved to suggest the invalidity of the search warrant. Let us proceed, please.

"*Mr. MacDonald:* I was hoping the court would feel differently."

Following the preliminary examination, defendant was bound over for trial and the case assigned to Recorder's Court Judge Del Rio for trial September 6. Defendant then filed a motion to suppress the evidence and, on August 28, 1973, Judge Del Rio conducted a hearing on the motion, at the conclusion of which the court ruled that Rule 9, § 1 was violated and the court would not allow judge-shopping. The motion to suppress was granted and the case dismissed. Plaintiff appeals.

We initially observe the record is not clear as to whether Rule 9 was violated. While the officer seeking the warrant frankly admitted that he did not first present the warrant to either Judge Leonard or Judge Ford, the examining magistrates, neither does the record disclose one way or the

other whether, at the late a.m. hour, either assigned magistrate was in his office or, if so, whether either had not in fact informed the prosecutor's office of their respective unavailability. If so, no violation of Rule 9 would occur. We need not decide the issue on this narrow ground. For decision purposes, we will assume, *arguendo,* Rule 9 was breached.

By statute, all judges of the Recorder's Court are empowered to sign search warrants. MCLA 764.1; MSA 28.860. If the judge is satisfied there is reasonable cause for the warrant's issuance, the statute provides he *"shall* issue a warrant". MCLA 780.651; MSA 28.1259(1) (emphasis supplied). Rule 9 obviously diminishes the statutory power since the rule precludes issuance if the Recorder's Judge is not the then-designated presiding magistrate, and available. This conflict between the statute and the rule raises the question of the extent to which a local court rule, approved by the Supreme Court, may abrogate or qualify an existing statute.

On this issue the people argue that a local court rule, as distinguished from a rule announced by the Supreme Court, cannot modify the provisions of a legislative enactment. *People v Williams,* 45 Mich App 630, 642; 207 NW2d 180 (1973). Defendant contends that *Williams* is inapplicable because in the present case the rule was expressly approved by the Supreme Court and this action raises the rule to the dignity of a rule proposed in the first instance by the Supreme Court. Relying upon *Ray Jewelry Co v Darling,* 251 Mich 157; 231 NW 101 (1930), the people contend that a court rule may not alter a court's subject matter jurisdiction. Defendant counters claiming that violation of Rule 9 does not affect the trial court's jurisdiction but only the admissibility of evidence. In

support of this claim, defendant refers to *Perin v Peuler,* 373 Mich 531, 541; 130 NW2d 4 (1964), and *Buscaino v Rhodes,* 385 Mich 474, 483; 189 NW2d 202 (1971), where the court sustained a rule of the Supreme Court affecting the admissibility of evidence even though the rule conflicted with a statute. Be this as it may, we need not and do not decide in this instance whether Rule 9 prevails over the statute, MCLA 764.1; MSA 28.860. For the purposes of our decision, we will assume that Rule 9 prevails and base our opinion on more substantial grounds.

Violation of Rule 9 does not necessarily require a suppression of the evidence. In suppressing the evidence, the trial court judicially applied the exclusionary rule as the penalty. Nothing in the rule provides a penalty, much less so severe a penalty. For decision purposes it is important to state the basic reasons for the exclusionary rule. Its purpose is to protect the citizen from impermissible police methods resulting in unreasonable searches and seizures. While recognizing that the purpose of the exclusionary rule is "to discourage unlawful police practices", *People v Roderick Walker,* 27 Mich App 609, 616; 183 NW2d 871 (1970), noted that the rule has its "limitations as a tool of judicial control", and that in some instances "the rule is ineffective as a deterrent". *Walker, supra,* referred to a statement in *Terry v Ohio,* 392 US 1, 15; 88 S Ct 1868, 1876; 20 L Ed 2d 889, 902 (1968), that:

"[A] rigid and unthinking application of the exclusionary rule, in futile protest against practices which it can never be used effectively to control, may exact a high toll in human injury and frustration of efforts to prevent crime." 27 Mich App 609, 616–617.

It has also been said that:

"The exclusionary rule is neither a statutory enactment nor an express provision of the fourth amendment to the United States Constitution. It is rather a command, judicially implied, intended to impose restraints upon law enforcement officers and to discourage abuse of authority when constitutional immunity from unreasonable search is involved. * * * In each case the rights of the accused must be balanced against the rights of the public." *State v O'Bremski,* 70 Wash 2d 425, 429; 423 P2d 530, 532–533 (1967).

The rule becomes a Fourth Amendment guarantee where the court has reason to believe the search involves unreasonable police methods. It is not invoked, even though error is found in the issuance of the warrant, where the facts indicate the arresting officers acted reasonably on the evidence before them and the court finds no threat to Fourth Amendment values. *State v Bisaccia,* 58 NJ 586; 279 A2d 675 (1971). Being strong medicine, the rule should not casually be employed lest the protection of the public be discouraged.

"The exclusionary rule must be recognized as strong medicine which improperly employed may have highly undesirable side effects." *People v Superior Court,* 5 Cal App 3d 109, 115; 84 Cal Rptr 778, 782 (1970).
"The Supreme Court has warned that 'the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. * * * A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting'. *United States v Ventresca,* 380 US 102, 109; 85 S Ct 741, 746; 13 L Ed 2d 684, 689 (1965)." *United States v Ravich,* 421 F2d 1196, 1202 (CA 2, 1970), *cert den* 400 US 834; 91 S Ct 69; 27 L Ed 2d 66 (1970), cited in *People v Moore,* 31 Cal App 3d 919, 925; 107 Cal Rptr 590, 594 (1973).

In *Moore, supra,* a search warrant properly sought for a quantity of dangerous drugs was issued on a printed warrant for narcotics. Following seizure of the drugs, defendant moved to quash the evidence. The trial court applied the exclusionary rule and granted the motion. Upon appeal, the appellate court reversed the trial court saying:

"In upholding an order denying defendant's motion to suppress evidence seized under the authority of an allegedly defective search warrant, Justice Compton * * * made certain observations which we feel have application to the instant case: 'The entire thrust of the exclusionary rule and the cases which have applied it is to encourage the use of search warrants by law enforcement officials. * * * The speed with which law enforcement is often required to act, especially when dealing with the furtive and transitory activities of persons who traffic in narcotics, demands that the courts make every effort to assist law enforcement in complying with the edicts that courts themselves have issued.' *Alvidres v Superior Court,* 12 Cal App 3d 575, 581; 90 Cal Rptr 682, 685, 686 (1970)." 31 Cal App 3d 919, 927; 107 Cal Rptr 590, 595–596.

Balancing the interests of defendant against the interest of protection of the public leads us to conclude that in the present case no Fourth Amendment rights of the defendant were involved. The officer's affidavit and the preparation of the warrant is unchallenged. No claim is made nor issue raised as to the reasonableness or propriety of the search. As to the public, it is incumbent upon courts to provide a speedy method of obtaining warrants so that delay on the part of the court does not defeat the objective of the warrant application which is frequently issued only after extensive police investigation and surveillance. Such efforts, and the police waiting in the wings to take a warrant and properly execute it—perhaps at

considerable personal risk—should not be frustrated by local rule, probably designed for the convenience of judges, requiring them to sit in wait on a judge who may be occupied for hours with a preliminary examination, or other matters, while other judges could attend to the search warrant immediately. Public policy, especially the sound policy of quick and expeditious apprehension of those who allegedly traffic in hard drugs, dictates against the trial court's action. It is not the public who should be penalized for the breach of an in-house court rule. The responsibility for breach must be borne by the offending judge—if, in fact, the violation occurred. The Recorder's Court itself should assume the responsibility of policing its own rules—rules which we hasten to add are proper and necessary for the sound administration of justice.

Given the foregoing policy considerations and because we find no Fourth Amendment right of defendant violated, we conclude the trial court was in error in suppressing the evidence and dismissing the case.

Reversed and remanded for further proceedings consistent with this opinion.

All concurred.