PEOPLE v JOKER

OPINION OF THE COURT

1. COURTS—SUPREME COURT—COURT RULES—PRACTICE AND PROCE-
DURE—LEGISLATION.

The Michigan Supreme Court has broad powers to promulgate
rules to assist in the efficient administration of justice, and
such rules take precedence over and supercede inconsistent
legislation in the area of practice and procedure.

2. COURTS—COURT RULES—LOCAL COURT RULES—ARREST WARRANTS—
ISSUING MAGISTRATE—STATUTES.

A local court rule of the Detroit Recorder's Court requiring arrest
warrants to be issued by the examining magistrate of that
court has the status of a rule promulgated by the Supreme
Court itself and takes precedence over the statutes authorizing
all Recorder's Court judges to issue warrants, to the extent that
the statutes are inconsistent with the court rule, where the
local court rule was properly submitted to the Supreme Court
which gave the rule its tacit approval by not affirmatively
rejecting the rule (GCR 1963, 927; MCLA 766.2, 764.1, Record-
er's Court Rule 9).

3. JUDGES—ARREST WARRANTS—ISSUANCE OF WARRANT—COURT
RULES.

Issuance by a judge of the Detroit Recorder's Court of an arrest
warrant not signed by the examining magistrate when the
examining magistrate is not absent or otherwise unavailable, in
contravention of a rule of the Recorder's Court, is reversible
error, requiring the warrant to be quashed and the charges
dismissed (Recorder's Court Rule 9).

4. STATUTES—ARREST WARRANTS—SECURITY FOR COSTS—INDIGENT
COMPLAINANT.

A statute which provides that a private citizen may seek an

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 20 Am Jur 2d, Courts §§ 82–86.

Power of court to prescribe rules of pleading, practice, or procedure.
110 ALR 28, s. 158 ALR 705.

[3, 4, 6] 5 Am Jur 2d, Arrest § 7 *et seq.*

arrest warrant upon posting of security for costs provides an alternative to requesting the prosecutor to seek a warrant and is therefore valid even though it does not entitle an indigent person to post a purely nominal sum as security for costs (MCLA 764.1).

DISSENT BY M. F. CAVANAGH, J.

5. COURTS—ARREST WARRANTS—COURT RULES—STATUTES—ISSUANCE OF WARRANTS.

*Notification to the Supreme Court of the adoption of a proposed lower court rule and the authority of the Supreme Court to alter lower court rules does not give precedence to such a rule in respect to a contrary statute; therefore, although a rule of the Detroit Recorder's Court requires that an arrest warrant be issued only by the examining magistrate, a statute which allows arrest warrants to be issued by any Recorder's Court judge is controlling, and issuance of a warrant by a judge other than the examining magistrate upon posting of security for costs by a complainant is proper (MCLA 764.1; Recorder's Court Rule 9).*

6. CONSTITUTIONAL LAW—STATUTES—ARREST WARRANTS—ISSUANCE OF WARRANTS—INDIGENT COMPLAINANT—SECURITY FOR COSTS.

*An arrest warrant may be issued by a court upon complaint of a private person with the filing of security for costs, and a substantial constitutional question is raised by a holding that a complainant's indigency precludes him from enforcing this statutory right, therefore, a magistrate may require only token payment of security for costs, after the magistrate has determined the complainant is indigent (MCLA 764.1).*

Appeal from Recorder's Court of Detroit, George W. Crockett, J. Submitted May 12, 1975, at Detroit. (Docket No. 22154.) Decided August 14, 1975. Leave to appeal denied, 395 Mich 779.

Lindsay Joker was charged with felonious assault. From denial of his motion to quash the arrest warrant, defendant appeals by leave granted. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, and *Neil H. Fink,* Special Prosecuting Attorney, for the people.

*Lippitt, Perlove, Varga & Zack,* for defendant.

Before: T. M. BURNS, P. J., and M. F. CAVANAGH and O'HARA,* JJ.

O'HARA, J. We accept the statement of facts as set forth in Judge CAVANAGH's opinion. We, however, arrive at a different legal conclusion.

The Constitution of 1963, art 6, § 5 provides in relevant part:

"The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state."

Amongst the reports of our Supreme Court the cases are cohort if not legion which recognize that this state's highest court has broad powers to promulgate rules to assist in the efficient administration of justice. For example, see *Perin v Peuler,* 373 Mich 531; 130 NW2d 4 (1964), and *Buscaino v Rhodes,* 385 Mich 474; 189 NW2d 202 (1971). That such rules take precedence over and supercede inconsistent legislation in the area of practice and procedure is hardly open to question. *Perin v Peuler* and *Buscaino v Rhodes, supra.*

GCR 1963, 927 (1) expressly authorizes certain courts to make local rules of practice with respect to matters not covered by nor in conflict with the Michigan General Court Rules.

Section 1 of Rule 9 of the Recorder's Court Rules, enacted pursuant to GCR 927, *supra,* provides:

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"Sec. 1. Issuance of Warrants. Requests for arrest warrants, and search warrants in cases of alleged felonies and high misdemeanors shall be presented to, and *the warrant shall issue in the name of the Examining Magistrate.* In his absence such warrants may be issued and signed by any available regular Judge of this Court. Bench warrants and capias writs shall be signed by the Judge who ordered their issuance." (Emphasis supplied.)

In contradistinction to Recorder's Court Rule 9 are various statutes such as MCLA 766.2; MSA 28.920 and MCLA 764.1; MSA 28.860 which authorize *all* Recorder's Court judges to issue warrants.

What then of this conflict, real or imagined? This necessitates a review of one Supreme Court case and two other cases out of our own Court.

As to the first of these cases, we have no quarrel with the basic proposition as set forth in *Krell v Wayne Circuit Judge,* 246 Mich 412; 224 NW 392 (1929), which holds that a local court rule cannot govern the same subject matter as that governed by a statute. *Krell* is simply inapposite since that case involved a local court rule as to which the Supreme Court had taken no action. Per contra, the Supreme Court has specifically approved Rule 9 of the Recorder's Court Rules. See *People v Mordell,* 55 Mich App 462, 463; 223 NW2d 10 (1974), *lv den* 393 Mich 771 (1974).

*People v Williams # 2,* 45 Mich App 630; 207 NW2d 180 (1973), presents a closer case to the situation herein. While *Williams* does state that only the Supreme Court can supercede a legislative enactment pursuant to its broad constitutional prerogatives under the 1963 Constitution, art 6, § 5, at no place does the *Williams* opinion directly discuss the extremely sticky situation as to whether or not a local court rule approved by the Supreme Court takes precedence over a conflicting

statutory provision concerned solely with matters of practice and procedure.

In the last of these cases, *People v Mordell, supra,* the defendant attacked the validity of a search warrant issued by a Recorder's Court judge other than the examining magistrate. This Court did not resolve the alleged conflict between the Supreme Court-approved local rule, the same Recorder's Court Rule 9 involved herein, and the statute, but held that even *if* Rule 9 did take precedence, failure to follow it did not affect defendant's Fourth Amendment rights. The Court reached this decision by balancing the interests of the defendant against the interests of protecting the public. No claim was made as to the search being unreasonable or improper. In effect the Court applied a harmless error standard and held the trial judge erred in suppressing the evidence and dismissing the case.

Since none of the cited cases are controlling decisionally we feel free to write to the issue as one of apparent first impression in this state.

In the instant case we have a situation where the Supreme Court has approved a local court rule requiring *inter alia* all arrest warrants to issue in the name of the examining magistrate, subject to limited exceptions, even though this contravenes specific statutory authority permitting all Recorder's Court judges to issue warrants. Parenthetically, we further hold that should Judge CAVANAGH be correct in his view that the involved court rule was never formally approved by the Supreme Court that it in no manner affects the result which we reach. This because the Supreme Court in effect *implicitly* placed its stamp of approval on Rule 9 of the Recorder's Court Rules by its silence or failure to affirmatively reject the rule

when proposed. Now it is true in the case of GCR 1963, 927 that it merely provides for the method to be followed by the particular court in adopting local rules and specifically states that the Supreme Court shall be notified in writing 10 days in advance of a rule's adoption.[1] Nowhere, we concede, does it expressly state that this procedure constitutes formal approval, or that the local rule is given the dignity of a rule originally promulgated by the Supreme Court or that such a rule takes precedence over a statute. But the irrefutable fact remains that GCR 927 expressly requires proper notice and additionally states that "[t]he adoption or continuance of any local court rules shall be subject to the superintending control of the Supreme Court". Read in a common sense manner this implies none too subtlely that the purpose of the notice provision is to permit the state's highest court to make a threshhold determination as to whether a proposed court rule or modification thereof should be promulgated at all. Since the local rule's adoption or continuance is expressly made subject to the superintending control of the Supreme Court, it is stretching credulity a bit to say that initial promulgation and continued existence of such a rule does not stand as mute testimony to the fact that the Supreme Court has already given its tacit "approval" of the involved rule.

Since the Supreme Court has by its action or inaction raised the local rule to the dignity of a rule initially promulgated by the highest court itself and since the subject matter of the court rule relates to both "practice and procedure", we are constrained to hold that the statutes authorizing

---

[1] We note that the rule concerning local court rules has been amended, effective May 28, 1975, but, as we read it, it has no effect on our decision here.

all Recorder's Court judges to issue warrants must give way to the extent that they are inconsistent with Rule 9 of the Recorder's Court Rules. See generally, *Buscaino v Rhodes,* and *Perin v Peuler, supra.*

Because of certain highly unusual circumstances involved in the present case we cannot see applying a "harmless error" or "manifest injustice" standard as did the Court in *People v Mordell, supra.* The *Mordell* opinion took the rather sensible view that the issuance of search warrants was a common procedure which could be handled as well by one judge as by another member of the judiciary and that it would unduly frustrate effective law enforcement to require that police delay obtaining warrants which could result in apprehension of narcotics dealers merely to comply with an "in-house court rule" intended for the convenience of the local judiciary. After balancing the interest of the defendant in a strict, literal compliance with the local court rule as against the interest of the public in ridding the streets of drug traffickers, *Mordell* concluded that the policy underlying the exclusionary rule did not dictate suppressing evidence obtained by a search and seizure which was unchallenged as to reasonableness.

The instant case is distinguishable from *Mordell.* Here we are dealing with a truly extraordinary statutory procedure, MCLA 764.1; MSA 28.860, providing for the issuance of an arrest warrant by a judge upon complaint of a private citizen who is prepared to file security for costs. That such is not the usual manner of obtaining an arrest warrant need not be gainsaid. We see no reason why judicial notice may not be taken of the fact that the prosecutor is the public official entrusted under applicable statutory and case authority with the

basic and fundamental decision as to whether a warrant will in fact issue. In the case at bar the Wayne County Prosecutor had discharged the duties of his office by investigating the charges made against defendant Lindsay Joker and declining to take any further action. Quite obviously the prosecutor found insufficient merit in the charges to justify initiation of criminal proceedings. Only then did Judge Ravitz authorize the issuance of an arrest warrant not signed by the examining magistrate in direct contravention of Rule 9 of the Recorder's Court Rules. This action constituted reversible error. Where there has been resort to such an extraordinary artifice to commence criminal proceedings following the good faith refusal of the prosecutor to act after investigation of a complainant's story, basic fairness, if not due process, would seem to require that we adhere to fundamental principles by requiring that there be strict compliance with the applicable procedures. Should we do less do we not invite seriously the possibility, nay the likelihood, of frivolous proceedings instigated before a magistrate favorable to the alleged victim? Even if this not be true the appearance of impropriety certainly exists and the judiciary as guardians of the law must be not only concerned that justice in fact be done but that it also *appear* that proper procedures were followed.

Thus we hold that without a showing that the examining magistrate was absent or otherwise unavailable the warrant was improperly issued and the warrant should be quashed and the charges dismissed.

We also must record our vigorous disagreement with the contention made in Judge CAVANAGH's opinion that it would raise grave constitutional questions if the complainant's alleged indigency

somehow precluded him from obtaining a warrant
because of inability to post the requisite security
for costs.

Unlike *Griffin v Illinois,* 351 US 12; 76 S Ct 585;
100 L Ed 891 (1956), the complainant is not faced
with a situation where he has been convicted of
the commission of a crime and stands to be de-
prived of an opportunity for full appellate review
solely because of his impecunious state. To the
contrary, he merely seeks to vindicate his right to
be free from alleged intrusions on his person.
Admittedly, this interest is hardly insubstantial
but it surely pales in comparison with the prospect
of answering criminal charges and the very real
possibility of having one's personal liberty re-
strained for some indefinite period by imprison-
ment. Nor should it be overlooked that the com-
plainant herein, in contrast with many indigents,
such as in *Griffin, supra,* was not faced with ob-
taining a waiver of certain fees in order to assert
his rights or totally foregoing any possibility of
redress. Just as any other citizen the complainant
could and, in fact, did importune the prosecutor's
office to issue an arrest warrant. That his efforts
were unavailing is not to the point. What is to the
point is that there was a reasonable, viable *alter-
native* open to the complainant to seek redress of
his grievances. This more than satisfies *Griffin* and
its progeny. Hence even if the complainant was
indigent he was not entitled to post a purely
nominal sum as security for costs.

In like manner, for yet another reason, we are
more than a little puzzled by the apparent holding
that it would be constitutionally impermissible to
require that a reasonable security bond be posted
in the case of an indigent. For purposes of discus-
sion only, let us suppose that the complainant

herein was not so fortunate as to have the charges against him dismissed and was eventually bound over for trial. As a purported indigent, we presume that he would not be able to post bond and he would not be able to secure his freedom unless released on his own recognizance. By failing to meet any bond set he necessarily would be incarcerated until the date of trial. The complainant would suffer the loss of his personal liberty *solely* because of his impoverished status. Yet this apparently raises no insurmountable constitutional obstacle since it happens countless times every day in Wayne County and no relief is granted to those individuals. Some may say that the two situations are not entirely comparable. Be that as it may, the interest of a criminal accused in not being deprived of his freedom is, in our view, substantially greater than the interest of a private citizen in seeking to right an alleged wrong. We also concede that the state's interest in insuring that an accused criminal will show up for trial is likewise a not insubstantial interest. But if we may deprive a man of one of his most basic rights, the freedom to go where he pleases, prior to any final adjudication of his guilt, we fail to see why we cannot place a limited condition precedent in the way of one who seeks to invoke an extraordinary procedure in order to cause criminal process to issue.

We have not chosen to discuss the separation of powers doctrine but we add that in our view the examining magistrate arrogated to himself authority which properly is vested in the prosecuting attorney. See generally, *People v Holbrook,* 373 Mich 94; 128 NW2d 484 (1964).

For the reasons stated herein, we reverse the order of the trial judge denying defendant's motion to quash the warrant.

T. M. BURNS, P. J., concurred.

M. F. CAVANAGH, J., *(dissenting)*. I must respect-
fully dissent from the majority's disposition of this
appeal.

This case arises from a confrontation between
the defendant, a police officer, and another person
named Franklin Newsom when the defendant ar-
rested Newsom for resisting and obstructing a
police officer. MCLA 750.479; MSA 28.747. After
arraignment, Newsom brought a motion to dismiss
the complaint and warrant before Detroit Record-
er's Court Judge Justin C. Ravitz, who had also
been the arraigning magistrate. Newsom also re-
quested that a warrant be issued against the de-
fendant police officer. After an evidentiary hear-
ing, Judge Ravitz on June 20, 1974, granted the
motion to dismiss and issued a warrant against the
defendant for felonious assault, MCLA 750.82;
MSA 28.277. With the warrant and complaint was
included an order setting security for costs at $1,
which was paid by complainant Newsom. The
defendant filed an emergency motion to quash the
warrant.

Several days later on June 24, 1974, after the
prosecutor had disqualified himself and the rest of
the Wayne County Prosecutor staff, Judge Ravitz
appointed a special prosecutor who continues to
represent the people at this time. Two days later,
the defendant filed an emergency application for
leave to appeal to the Michigan Court of Appeals.
On June 27, 1974, one day before the preliminary
examination was scheduled, this Court entered an
order quashing the warrant on the grounds that
the setting of costs at $1 was arbitrary and capri-
cious in light of MCLA 764.1; MSA 28.860, and
*People v Holbrook,* 373 Mich 94; 128 NW2d 484
(1964).

This order, however, was vacated on October 11,

1974, by the Michigan Supreme Court. The cause was remanded to Recorder's Court for a hearing on the motion to quash, which was pending there. *People v Joker,* 392 Mich 801 (1974).

The defendant's motion to quash in Recorder's Court was denied and, after a preliminary examination, he was bound over for trial on the felonious assault charge. On December 18, 1974, this Court granted a second emergency application for leave to appeal.

The defendant contends that we should quash the subject warrant and dismiss the charges against him because of two alleged irregularities in the initial proceeding which resulted in the issuance of the warrant against him.

The first contention of error is that Judge Ravitz failed to adhere to the procedure set forth in Detroit Recorder's Court Rule 9 for the issuance of the warrant for his arrest. This, defendant contends, deprived the magistrate of jurisdiction to issue a warrant against him.

Rule 9 of the Recorder's Court Rules provides in pertinent part:

"Sec. 1. Issuance of Warrants. Requests for arrest warrants, and search warrants in cases of alleged felonies and high misdemeanors shall be presented to, and the warrant shall issue in the name of the Examining Magistrate. In his absence such warrants may be issued and signed by any available regular Judge of this Court. Bench warrants and capias writs shall be signed by the Judge who ordered their issuance.

"Sec. 2. Record of Warrants. All arrest and search warrants shall be prepared by the prosecutor and numbered and recorded before delivery to any officer or other person for service."

The problem involved in this issue is raised by

the fact that these rules are, to some extent, inconsistent with certain statutes, both in respect to the authority of a particular judge to issue a warrant and the manner in which that warrant may be issued.

MCLA 766.2; MSA 28.920 along with MCLA 764.1; MSA 28.860 gives authority to issue warrants to, *inter alia,* all Recorder's Court judges. The statutes contain no stipulation as in Rule 9 that the examining magistrate be absent before other judges may exercise that authority. See also MCLA 780.651; MSA 28.1259(1). The recent decision of *People v Mordell,* 55 Mich App 462, 466; 223 NW2d 10 (1974), recognized this inconsistency between the court rule and the statute:

> "By statute, all judges of the Recorder's Court are empowered to sign search warrants. MCLA 764.1; MSA 28.860. If the judge is satisfied there is reasonable cause for the warrant's issuance, the statute provides he *'shall* issue a warrant'. MCLA 780.651; MSA 28.1259(1) (emphasis supplied). Rule 9 obviously diminishes the statutory power since the rule precludes issuance if the Recorder's Judge is not the then-designated presiding magistrate, and available. This conflict between the statute and the rule raises the question of the extent to which a local court rule, approved by the Supreme Court, may abrogate or qualify an existing statute."

*People v Williams #2,* 45 Mich App 630; 207 NW2d 180 (1973), also involved a potential conflict between a Recorder's Court Rule and a statute. Although there was some question as to whether the rule encompassed the trial judge's actions in that case, *Williams* held that only the Michigan Supreme Court, through exercise of its Const 1963, art 6, § 5 power to adopt general court rules, could modify the provisions of a legislative enactment. 45 Mich App 630, 642. See also *Pressley v Wayne*

*County Sheriff,* 30 Mich App 300; 186 NW2d 412 (1971), and *Krell v Wayne Circuit Judge,* 246 Mich 412; 224 NW2d 392 (1929).

Recorder's Court Rule 9 cannot be construed to cover only the usual situation of a request for a warrant by the prosecutor. It must encompass citizen requests also. The rotating designation of the Recorder's Court judges as examining magistrate cannot prohibit a private citizen from seeking the issuance of a warrant under MCLA 764.1, 766.2; MSA 28.860, 28.920. This ministerial rule was intended only to channel the great majority of cases, which involve prosecutor-requested warrants, into the court of the examining magistrate when he was not absent. This would properly serve the purposes of expediting the criminal justice process and of deterring the practice of "judge-shopping". However, these purposes clearly cannot prohibit a complainant from proceeding on his own, without an order from the prosecutor, if security for costs is filed. *People v Carter,* 379 Mich 24, 29; 148 NW2d 860 (1967).

The court rule cannot stand in light of the contrary statute empowering all Recorder's Court judges to issue warrants. MCLA 766.2; MSA 28.920 authorizes any magistrate to examine a complainant and witnesses who contend that a criminal offense has been committed. If he determines from that examination that an offense has been committed, "the magistrate shall issue a warrant". MCLA 766.3; MSA 28.921.

The majority opinion proceeds under the assumption that the Michigan Supreme Court, pursuant to GCR 1963, 927, has given its express approval to Recorder's Court Rule 9 so as to give the local court rule precedence over a statute. GCR 927(2), at the time Rule 9 was adopted, stated as follows:

"The Supreme Court shall be notified in writing 10 days in advance of adoption or amendment of any local court rules. The adoption or continuance of any local court rules shall be subject to the superintending control of the Supreme Court. Two copies of any local court rules or amendment thereto shall be mailed to the Supreme Court whenever such rules or amendments are adopted. Amended December 3, 1968."

This is apparently the *imprimatur* which the majority concludes is a justification for the elevation of a local court rule so as to abrogate a statute. But recently this Court, in considering a similar contention raised as to the authority of Recorder's Court Rule 10, expressly denied this interpretation of the court rule:

"GCR 1963, 927(2) only facilitates the control of the Supreme Court over the rules for practice and procedure in all courts of the state. It does not provide a way for lower courts to share the power to fashion rules that are superior to legislative enactments. 'No other court, only the Supreme Court, enjoys that power.' *Pressley v Wayne County Sheriff,* 30 Mich App 300, 313; 186 NW2d 412 (1971)." *In the Matter of the Attorney Fees of Ruth Ritter and Raymond E. Willis,* 63 Mich App 24; 233 NW2d 876 (1975).

I concur in this reading of GCR 927. The notification to the Supreme Court and the authority of that Court to alter lower court rules does not effect precedence over a contrary statute. Moreover, it is interesting to note that GCR 1963, 925.1, concerning powers of a judge in multiple judge circuits, states:

"The powers and duties of each judge shall be the same as judges in the circuits having only 1 judge."

The effect of the majority's rule will serve to

reduce the authority of a Recorder's Court judge in the area of issuing warrants.

For these reasons, I conclude that a Recorder's Court judge who is not the examining magistrate may nevertheless examine a complainant's request that a warrant be issued; and, if it appears that a criminal offense has been committed, the judge is authorized to issue the arrest warrant.

As his second issue, defendant contends that the setting of security for costs at $1 violates MCLA 764.1; MSA 28.860.

MCLA 764.1; MSA 28.860 states as follows:

"For the apprehension of persons charged with offenses, excepting such offenses as are cognizable by justices of the peace, the justices of the supreme court, the several circuit judges, courts of record having jurisdiction of criminal causes and circuit court commissioners, mayors and recorders of cities and all justices of the peace, shall have power to issue processes to carry into effect the provisions of this chapter: Provided, however, That it shall not be lawful for any of the above named public officials to issue warrants in any criminal cases, except where warrants are requested by members of the department of public safety for traffic or motor vehicle violations until an order in writing allowing the same is filed with such public officials and signed by the prosecuting attorney for the county, or unless security for costs shall have been filed with said public officials."

See also MCLA 775.12; MSA 28.1249. The statute basically provides for two methods for a court's issuance of an arrest warrant: upon written order of the prosecuting attorney or upon complaint of a private person with the filing of security.

The requirement of "security for costs" has not been completely clarified by our courts. *People v*

*Griswold,* 64 Mich 722; 31 NW 809 (1887), considered an early statute, the reenactment of which is MCLA 774.4; MSA 28.1195, the counterpart of MCLA 764.1 for the issuance of warrants for offenses cognizable by a justice of the peace. Like MCLA 764.1, MCLA 774.4 provides for the issuance of a warrant upon complaint of a private person with the filing of "security for costs".

*Griswold* held that a complainant's failure to file security for costs was not a ground for reversing the conviction:

"The object sought to be accomplished by that statute was to guard against the indiscretion, frequently indulged in by magistrates, in permitting legal proceedings to be instituted against parties for crime without any previous inquiry into the circumstances. While an omission to secure an order from the prosecuting attorney before issuing process in criminal cases might subject the magistrate to censure, and possibly, in some cases, to pecuniary injury and official embarrassment, it was never intended to deprive the court of jurisdiction in any case; and whether the complaining party has given to the people security for costs in the case is a subject in which the respondent is not especially interested, and, if the people are satisfied to prosecute without such security, there is no reason why he should complain." 64 Mich 722, 723.

This case would seem to support the prosecutor's argument against reversal, but *Griswold* has been overruled by *People v Holbrook,* 373 Mich 94; 128 NW2d 484 (1964). In that case, a justice of the peace issued an arrest warrant for a game law violation. The complaint had been drawn up by a conservation officer and signed by a state trooper. The Court reversed the conviction. The justice of the peace had no jurisdiction since there had been no order signed by the prosecuting attorney and

since the two statutory exceptions to such a procedure were not factually applicable.

The fact that the prosecutor had subsequently appeared and prosecuted the case did not serve to validate the initial unlawfulness. It is in this context that *Griswold* was specifically overruled. 373 Mich 94, 99.

Whether *Griswold's* rule remains viable that only the county, and not the party against whom a complaint was filed, has standing to complain about a magistrate's failure to require security for costs is an uncertain question. *Holbrook* stated in dictum in explaining MCLA 774.4:

"Exception is allowed in connection with traffic violations, or a complainant is permitted to proceed on his own if security for costs is filed with the justice. The filing of costs assures payment to the justice, and is also a test of the complainant's belief in the guilt of the person accused." 373 Mich 94, 97.

See also *People v Carter,* 379 Mich 24; 148 NW2d 860 (1967).

There is another variable for consideration. The complainant had a statutory right to institute this criminal proceeding by requesting the issuance of a warrant. A substantial constitutional question would be raised if we were to hold that the complainant's indigency precluded him from enforcing this right. In a different context, *Griffin v Illinois,* 351 US 12; 76 S Ct 585; 100 L Ed 891 (1956), stated:

"Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal. This hope, at least in part, brought about in 1215 the royal concessions of Magna Charta: 'To no one will we sell, to no one will we refuse, or delay, right or justice'.

* * * These pledges were unquestionably steps toward a fairer and more nearly equal application of criminal justice. In this tradition, our own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.' [Citations omitted.]

*    *    *

"In criminal trials a State can no more discriminate on account of poverty than on account of religion, race or color. Plainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence and could not be used as an excuse to deprive a defendant of a fair trial." 351 US 12, 16–18.

It is also relevant to note that GCR 1963, 120 authorizes a court to suspend or waive the payment of fees and costs required to be paid by law for indigent persons. Judge Ravitz made an express determination that complainant Newsom was indigent.

Because of all of these considerations I would hold that a magistrate's requiring of only token payment of security for costs under MCLA 764.1; MSA 28.860 after the magistrate has determined the complainant to be indigent is not error.

I would affirm the order of the trial court denying the defendant's motion to quash the warrant.