*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BURRESS and KIZER.

---

DANIEL A. BURRESS and THOMAS KIZER, JR.,

        Plaintiffs-Appellants,

v

LIVINGSTON CIRCUIT COURT JUDGE and
53RD DISTRICT COURT,

        Defendants-Appellees.

UNPUBLISHED
April 21, 2022

No. 356653
Livingston Circuit Court
LC No. 19-000121-AS

---

Before: BOONSTRA, P.J., and M. J. KELLY and SWARTZLE, JJ..

PER CURIAM.

Plaintiffs appeal by right the circuit court's order dismissing their petition for superintending control. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiffs are residents of Livingston County. On December 28, 2018, plaintiffs attempted to file with the 53rd District Court an "Emergency Motion and Order to Show Cause" at the Livingston County Courthouse. Plaintiffs have described their motion as

> requesting the Attorney General of the State of Michigan and the Livingston County Prosecutor (or their designated representative) to appear before the court and provide their position on the approval of proposed criminal complaints against the Honorable Theresa Brennan, an elected judge of said court, and now retired Michigan State Police Detective Sean Furlong, and in the event they declined to approve the same, to comment on the amount of security that they felt would be appropriate, and determine which office would oversee the prosecution.

This motion was not associated with an existing case or case number.

-1-

On the day in question, Judge William Hultgren had been assigned by the State Court Administrative Office (SCAO) to serve as a visiting judge and assist with the docket, and was the only judge working at the courthouse that day,[1] which was the Friday before the New Year's holiday weekend. Upon arrival, plaintiffs attempted to file their motion along with proposed criminal complaints. These were returned by the court clerk for being defective because they did not indicate that they had been endorsed by the Livingston County prosecuting attorney. Plaintiffs told the clerk that they did not require the prosecuting attorney's approval, and the clerk returned to Judge Hultgren with the documents. After several hours, the clerk returned and informed plaintiffs that the documents would be accepted after plaintiffs posted a security bond in the amount of $150,000, $75,000 for each proposed criminal complaint. Plaintiffs were unable to post the bond, and they asked for a written order reflecting that the court would only accept the documents for filing upon the posting of a security bond, which Judge Hultgren entered.

Plaintiffs subsequently filed their petition for superintending control, requesting that the circuit court vacate Judge Hultgren's order, disqualify Chief Judge Miriam Cavanaugh[2] from "involving herself in this or any other way" with plaintiffs and their filings, disqualify Judge Hultgren from further related proceedings on the basis of "the improper direction and assistance" he had allegedly received from Chief Judge Cavanaugh regarding this matter, and order the district court to accept their filings without a security bond. Although the specifics are disputed by the parties, it appears that Judge Hultgren consulted at least briefly with Chief Judge Cavanaugh when first confronted with plaintiffs' documents. The Chief Judge had previously recused herself from a grand jury proceeding involving plaintiffs and former Judge Brennan because of potential bias or the appearance of impropriety. Therefore, plaintiffs argued, the Chief Judge should not have involved herself in any way with their motion, even to the extent of advising Judge Hultgren. Plaintiffs also claimed that the $150,000 security bond "as a precondition to the filing of their submissions" was "unreasonable, punitive, obstructive, and an unconstitutional denial of [their] right to access to the courts." Finally, plaintiffs contended that Judge Hultgren lacked jurisdiction to issue his order because he was not assigned to handle disqualifications and because the blind-draw system needed to be utilized to select a judge.

The circuit court dismissed plaintiffs' petition, holding that plaintiffs' emergency motion effectively sought to file a citizen criminal complaint and, accordingly, MCL 764.1(1) and MCR 6.101(C) controlled and required that a security bond be posted in the absence of a prosecutor's endorsement, which plaintiffs indisputably did not have. The court determined that

---

[1] Plaintiffs asserted in their petition for superintending control that Judge Carol Sue Reader and her staff "were present in chambers and available to serve"; however, defendants responded that Judge Reader was on vacation on December 28, was set to retire on December 31, 2018, and was only in the courthouse to clean out her office.

[2] The parties refer to Judge Cavanaugh as "Chief Judge" Cavanaugh; therefore for simplicity we will also refer to her by this honorific. We note that Livingston County's government website indicates that Judge Cavanaugh was elected as a probate court judge, and currently serves as "Chief Judge Livingston County Probate Court; Presiding Judge Probate; Presiding Judge Criminal; Presiding Judge Juvenile Court." See https://www.livgov.com/courts/Pages/Judge-Miriam-Cavanaugh-profile.aspx (last accessed March 28, 2022).

the security bond was not an unconstitutional filing fee but, rather, a requirement for the filing of a citizen's criminal complaint as required by statute. Without the bond, there was no duty to accept the filing. The circuit court also ruled that plaintiffs had failed to show that the amount was unreasonable. Regarding disqualification, the circuit court held that plaintiffs were not entitled to relief because, ultimately, the Chief Judge did not handle the issue but allowed it to be resolved by Judge Hultgren.

Moreover, the circuit court noted that plaintiffs were aware at the courthouse that Judge Hultgren had spoken to the Chief Judge but failed to raise any concerns regarding disqualification until the filing of the petition for superintending control; in other words, plaintiffs never asked Judge Hultgren or Chief Judge Cavanaugh to disqualify themselves. Finally, regarding plaintiffs' jurisdictional challenges, the circuit court held that the blind-draw system was inapplicable because no case had been filed; plaintiffs did not file the security bond and, accordingly, their documents were not accepted. The circuit court also noted that Judge Hultgren was not assigned plaintiff's case as part of his docket; rather, he decided only whether the documents would be accepted and filed that day.

This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a circuit court's decision to deny a request for superintending control. *In re Grant*, 250 Mich App 13, 14; 645 NW2d 79 (2002). A court abuses its discretion when its decision is "outside the range of principled outcomes." *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). We review de novo questions of statutory interpretation, as well as the construction and application of the court rules, *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010), constitutional issues, *Barrow v Detroit Election Comm*, 301 Mich App 404, 411; 836 NW2d 498 (2013), and jurisdictional challenges, *Forest Hills Cooperative v Ann Arbor*, 305 Mich App 572, 615; 854 NW2d 172 (2014).

"When interpreting a statute, [this Court] must ascertain the Legislature's intent," which is accomplished "by giving the words selected by the Legislature their plain and ordinary meanings, and by enforcing the statute as written." *Griffin v Griffin*, 323 Mich App 110, 120; 916 NW2d 292 (2018) (quotation marks and citation omitted). If a statute is unambiguous, it must be applied as plainly written. *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 971 NW2d 584 (2018). This Court may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Plaintiffs argue that the circuit court erred by dismissing their petition for superintending control. We disagree.

"A superintending control order enforces the superintending control of a court over lower courts or tribunals." *Beer v City of Fraser Civil Service Com'n*, 127 Mich App 239, 242; 338 NW2d 197 (1983). The process of seeking an order of superintending control is not an appeal;

rather, a petitioner seeking an order of superintending control requests that a higher court order a lower court or tribunal to perform a clear legal duty it has refused to perform. *People v Yeotis (Flint Municipal Judge)*, 383 Mich 429, 432; 175 NW2d 750 (1970); *Michigan Ass'n for Retarded Citizens v Wayne Co Probate Judge*, 79 Mich App 487, 492; 261 NW2d 60 (1977). This Court has previously set forth the general principles governing the issuance of an order of superintending control:

> Superintending control is an extraordinary remedy generally limited to determining whether a lower court exceeded its jurisdiction, acted in a manner inconsistent with its jurisdiction, or failed to proceed according to law. Superintending control is the proper method to challenge the general practices of an inferior court. For superintending control to lie, the plaintiff must establish that the defendant has failed to perform a clear legal duty and that plaintiff is otherwise without an adequate legal remedy. [*In re Credit Acceptance Corp*, 273 Mich App 594, 598; 733 NW2d 65 (2007), aff'd sub nom *Credit Acceptance Corp v 46th Dist Court*, 481 Mich 833 (2008) (citations omitted).]

MCL 764.1(1), as amended by 2014 PA 389, which was the version in effect at the time of this action and the circuit court's decision, provided:

> For the apprehension of persons charged with a felony, misdemeanor, or ordinance violation, a judge or district court magistrate may issue processes to implement this chapter, except that a judge or district court magistrate shall not issue a warrant for other than a minor offense unless an authorization in writing allowing the issuance of the warrant is filed with the judge or district court magistrate and, except as otherwise provided in this act, the authorization is signed by the prosecuting attorney, *or unless security for costs is filed with the judge or district court magistrate*. [Emphasis added.]

Similarly, MCR 6.101(C) (emphasis added) provides: "A complaint may not be filed without a prosecutor's written approval endorsed on the complaint or attached to it, *or unless security for costs is filed with the court.*"

In *People v Holbrook*, 373 Mich 94, 97; 128 NW2d 484 (1964), our Supreme Court, interpreting an older but similar statute regarding citizen criminal complaints, stated that "a complainant is permitted to proceed on his own if security for costs is filed with the [court]. The filing of costs assures payment to the [court], and is also a test of the complainant's belief in the guilt of the person accused." In *People v Joker*, 63 Mich App 421, 427; 234 NW2d 550 (1975),[3] this Court, interpreting a prior version of MCL 764.1(1), stated that a trial court would not issue

---

[3] *Joker* was decided before November 1, 1990, and is therefore not binding on this Court. MCR 7.215(J)(1). However, "[w]e think it reasonable to draw the negative inference that we are not strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990, but we think they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

an "arrest warrant" unless the "private citizen . . . is prepared to file security for costs." This Court explicitly rejected the contention that a constitutional deprivation could occur if the security requirement were enforced, holding that "even if the complainant was indigent he was not entitled to post a purely nominal sum as security for costs." *Id*. at 428-429.

Plaintiffs, however, contend that their "Emergency Motion and Order to Show Cause" was not an attempt to file citizen criminal complaints and that, accordingly, MCL 764.1(1) and MCR 6.101(C) were inapplicable. Plaintiffs' argument elevates form over substance; the mere fact they chose to label their filing as a motion to show cause does not change its fundamental nature. See *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2s 399 (2007) ("It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim.") (citation omitted). We agree with the circuit court that plaintiffs cannot "have it both ways" and that MCL 764.1(1) and MCR 6.101(C) applied to plaintiff's motion, regardless of its label. Plaintiffs' own petition in the circuit court, and statements made to the court, reveal that they sought to initiate criminal proceedings as private citizens and that they were aware of the security bond requirement. Plaintiffs sought to have the district court require the Attorney General and Livingston County prosecutor "to appear before the court and provide their position *on the approval of proposed criminal complaints* against" former Judge Brennan and Detective Furlong. Plaintiffs also sought direction "*on the amount of security* that they felt would be appropriate." At the hearing on their petition for superintending control, plaintiffs stated that "[i]t wasn't an investigation. The investigation had been done. *It was to file criminal charges*, but to give the prosecutor and the attorney general the first option to decide whether or not they were going to do it, and if not, *then to issue a warrant*." Therefore, by plaintiffs' own admissions and statements, we see no error in the circuit court's determination that they sought to file a citizens' complaint and that MCL 764.1 and MCR 6.101 governed.

Under both MCL 764.1(1) and MCR 6.101(C), plaintiffs were required either to obtain the prosecutor's endorsement, which they indisputably did not do, or to provide security for costs. Neither the statute nor the court rule provide for a third option of compelling the Attorney General and county prosecuting attorney to appear in court to provide a pre-filing assessment or otherwise discuss the issue with plaintiffs. The procedure for filing civilian criminal complaints was explained to plaintiffs at the courthouse, and their own filings indicate they were aware of it. Without a security bond or endorsement, there was no duty for the clerk to accept their documents for filing. The fact that plaintiffs chose to file their documents on a Friday afternoon, before a holiday, has no bearing on the existence of defendants' legal duty; moreover, the fact that plaintiffs did not have the funds for security is also immaterial. See *Joker*, 63 Mich App at 427. The plain language of the statute and court rule do not allow for deviation; plaintiffs were subject to a statutory requirement that "assures payment to the justice, and is also a test of the complainant's belief in the guilt of the person accused." *Holbrook*, 373 Mich at 97. Nor have plaintiffs advanced any substantive or persuasive argument or authority in support of their contention that the amount was unreasonable. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted). When "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Id*. (quotation marks and citation omitted).

Plaintiffs also argue that the circuit court erred by not ordering discovery before ruling on their petition, but MCR 3.302(E)(3)(c) explicitly leaves this issue to the court's discretion, and "[n]othing in the context of the rule specifically *requires* that the issuing court conduct a trial-like proceeding . . . if the record is clear." *In re Rupert*, 205 Mich App 474, 477; 517 NW2d 794 (1994). The circuit court acted within its discretion in this case, because the true nature of plaintiffs' filing could be determined by reference to the existing record. See *Adams*, 276 Mich App at 710-711.

Further, we find plaintiffs' disqualification arguments to be unpersuasive. We note first that, because plaintiffs failed to raise this issue before the challenged judge, this issue is unpreserved. See MCR 2.003(B) and MCR 2.003(D)(3)(a)(*i*). "Unpreserved claims are reviewed for plain error, which 'occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings.' " *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) (citation omitted).

MCR 2.003(C)(1) sets forth reasons for disqualification of a judge, including bias and the appearance of impropriety. Subrule (D) provides that "[f]or courts other than the Supreme Court, when a judge is disqualified, the action must be assigned to another judge of the same court, or, if one is not available, the state court administrator shall assign another judge." MCR 2.003(D)(4)(a). "A trial judge is presumed to be fair and impartial, and any litigant who would challenge this presumption bears a heavy burden to prove otherwise." *In re Susser Estate*, 254 Mich App 232, 237; 657 NW2d 147 (2002).

Plaintiffs have failed to overcome this heavy burden. As the circuit court recognized, plaintiffs requested that the Chief Judge be disqualified from further involving herself and that the matter be assigned to a different judge; indeed, this is exactly what happened. Chief Judge Cavanaugh did not handle this matter; instead, Judge Hultgren did so, in keeping with MCR 2.003(D)(4)(a), which provides that "the action must be assigned to another judge of the same court . . . ." Additionally, plaintiffs have failed to show evidence of impropriety or bias. Judge Hultgren handled this matter and issued the written order. Although he may have briefly consulted with the Chief Judge, plaintiffs merely speculate that the Chief Judge improperly directed him. We also note that plaintiffs failed to raise any concern about the chief judge's brief involvement until *after* the security bond was ordered. The circuit court stated that plaintiff's disqualification argument appeared to be nothing more than "after the fact sour grapes based on Judge Hultgren's order regarding security," and we agree with that assessment.

Finally, we discern no jurisdictional issues. MCL 600.826 authorizes our Supreme Court and SCAO to direct elected probate judges to assist other courts and perform specific assignments. MCR 8.103(4) gives SCAO the authority to "recommend to the Supreme Court the assignment of judges where courts are in need of assistance and carry out the direction of the Supreme Court as to the assignment of judges." MCR 8.111 governs the assignment of cases to judges in Michigan courts. MCR 8.111(B) (emphasis added) provides that "[a]ll cases must be assigned by lot, unless a different system has been adopted by local court administrative order under the provisions of subrule 8.112. Assignment will occur *at the time the case is filed* or before a contested hearing or uncontested dispositional hearing in the case, as the chief judge directs."

In this matter, no case was filed because plaintiffs did not submit the required security bond, thereby making MCR 8.111(B) and the blind-draw system inapplicable.[4] Filing and assignment would have occurred only if plaintiffs' documents had been accepted for filing. Plaintiffs cite no authority to support their position that the blind-draw system applies to pre-filed matters. Additionally, Judge Hultgren was assigned by the SCAO to assist with the docket, and this is what he did in this matter. Although the SCAO assignment provided that it did not cover disqualifications, this was not a disqualification proceeding; it was a proposed citizens' complaint that plaintiffs sought to file on a Friday before a holiday weekend at a time with low staff in the courthouse. Plaintiffs asserted that their claims were time-sensitive, hence the "emergency" label on their documents, and the visiting judge merely exercised his given authority to resolve the matter.

Plaintiffs have not shown that defendants failed to perform a clear legal duty. *Credit Acceptance Corp*, 273 Mich App at 598. Moreover, plaintiffs' arguments concerning judicial disqualification and jurisdiction are unpersuasive. Therefore, the circuit court did not abuse its discretion by denying the petition for superintending control.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[4] Moreover, to the extent that plaintiffs contend that their attempted filing was of a civil action of some kind, plaintiffs have not demonstrated that their proposed filing satisfied the requirements of the Michigan Court Rules. See, e.g., MCR 2.101(B) ("A civil action is commenced by filing a complaint with a court."); MCR 2.111(B) (setting forth the required contents of a complaint); MCR 1.109(D) (setting forth the required contents of documents filed with a court, including a caption setting forth the names of the parties and the assigned case number).